FILED

2005 Oct-04  AM 11:09
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| TIECO, INC., | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **CIVIL ACTION NO. CV-01-RRA-1372-S** |
| | ) | |
| USX CORPORATION, et al., | ) | |
| | ) | |
| **Defendants.** | ) | |

## AMENDED COMPLAINT

Comes now TIECO, Inc. (hereinafter "TIECO") and seeks damages against United States Steel Corporation (formerly and throughout the litigation during which these events occurred, USX Corporation, and referred to herein as "USX"), Robert E. Hilton ("Hilton"), and James B. Wager ("Wager"), and alleges and avers, based upon its knowledge, information and belief, with respect to the actions of Defendants, as follows:

## INTRODUCTION

In June of 1995, USX, one of the largest employers in the state of Alabama, began a campaign to collect what USX contended was a civil debt owed by TIECO, a family owned company, and to ruin the reputation of TIECO, its officers and employees in the process.  USX's campaign ended with a federal jury awarding TIECO approximately $7.2 Million Dollars because of USX's wrongful conduct in conspiring with the Alabama Attorney General's Office, the State's highest law enforcement agency,  to bring about criminal indictments against TIECO and in violating TIECO's civil rights.  This case is not about USX's wrongful conduct from June of 1995 through July of 1997 that lead to the dismissal of the criminal indictments and the civil jury verdict. This case is about the wrongful conduct of USX and others before, during, and after the trial of

USX's claims against TIECO.  This case is about USX's intentional withholding of evidence vital to TIECO's defenses and counterclaims.  This case is about the perjury committed by agents of USX's Law Department and Audit Division in an effort to mislead the federal district court and TIECO as to the existence and location of withheld evidence before, during and after *TIECO I*.  Most of all, this case is about a company and its employees who believed they were above the law.

On October 29, 1999, the United States District Court for the Northern District of Alabama dismissed USX's claims because of USX's failure to produce relevant and requested discovery. However, USX's battle did not end before USX caused TIECO to expend additional resources to combat the unlawful practices USX engaged in before, during and after the trial of the federal civil litigation.

**PARTIES**

1.      Plaintiff is an Alabama corporation with its headquarters located in Jefferson County, Alabama.

2.      Defendant USX Corporation is a predecessor entity of United States Steel Corporation.  At all times relevant to the facts in this case USX was a Delaware corporation with its corporate offices located in Pittsburgh, Pennsylvania; one of its primary steel manufacturing plants was located in Fairfield, Jefferson County, Alabama; and USX acted through its duly authorized officers, agents and, employees.

3.      Defendant Robert E. Hilton is a resident of the United States of America and over the age of nineteen years.  At all times relevant to this litigation, Defendant Hilton was a resident of the Commonwealth of Pennsylvania and an Assistant General Counsel at USX Corporation.

4.      Defendant James B. Wager is a citizen of the United States of America and over the

age of nineteen years.  At all times relevant to the matters leading to the federal civil litigation described below, Defendant Wager was a resident of the Commonwealth of Pennsylvania and was Manager of Audit for Defendant USX's Audit Division in Pittsburgh, Pennsylvania.  At the time of the trial of the federal civil litigation, Defendant Wager was a resident of Slovakia and the Director of Administration for a joint venture known as VS-ED/ VSZ-U.S. Steel.

**VENUE**

5.     This matter is before the Court as a result of the removal of this case by Defendants pursuant to 28 U.S.C. §1441.  With this Court's dismissal of a non-diverse defendant, this matter is now before this Court pursuant to 28 U.S.C. §1332.

**STATEMENT OF FACTS**

<u>BACKGROUND</u>

6.     TIECO is a distributor of turf and industrial equipment in the State of Alabama.  Until 1995, USX had been a long-time TIECO customer purchasing items including but not limited to, Cushman brand parts and vehicles, as well as other machinery and lawn equipment.

7.     On December 15, 1995, USX filed a federal lawsuit against TIECO alleging violations of the Racketeer Influenced and Corrupt Practices Act ("RICO"), fraud, and breach of contract.  USX's federal lawsuit claimed TIECO used an accounting system that billed USX for Cushman parts without any parts being delivered or allowed USX's employees to receive personal items.  In response, TIECO answered that at the request of USX's duly authorized agents, TIECO billed USX for parts and, upon payment, issued a credit to USX's account.  When the credit level was sufficient, TIECO would then deliver a whole Cushman vehicle to USX.

8.     On or about June 4, 1996, TIECO filed counterclaims against USX pursuant to 42

U.S.C. §1983 and various state law claims.  TIECO alleged in its counterclaims that USX engaged in a conspiracy with the Office of the Attorney General of the State of Alabama to violate TIECO's civil rights by illegally seizing TIECO's records as part of an effort to collect a civil debt claimed by USX.

9.      On June 14, 1996, indictments were issued against TIECO by the grand jury of Jefferson County, Alabama.  The key prosecution witness before the grand jury was USX's then Audit Manager, James Wager.  Mr. Wager presented testimony to the grand jury and illustrated his understanding of TIECO's accounting records by use of charts and overlays he prepared.  Mr. Wager's overlay presentation reflected the billing of Cushman parts to USX.

10.     On August 12, 1996, in the Jefferson County Circuit Court, TIECO filed a motion to dismiss the indictments and a motion to suppress evidence based upon the prosecutorial misconduct of the Attorney General's Office involving the joint investigation of TIECO by the Attorney General's Office and its co-conspirator, USX.  The state circuit court conducted an evidentiary hearing that extended several months.

11.     On or about August 30, 1996, the federal district court dismissed the civil lawsuit with leave to reinstate the case upon the conclusion of the criminal matters.

12.     On April 15, 1997, the last day of the evidentiary hearing in state court, the Attorney General's Office voluntarily dismissed the indictments against TIECO that had alleged USX as the victim.  USX was represented by its counsel from the law firm of Burr & Forman at all times during the evidentiary hearing.  USX was also represented by Burr & Forman in the state criminal district and circuit courts on TIECO's motion for the return of the seized property and petition for writ of mandamus, respectively.

4

13.     On July 16, 1997, the state circuit court dismissed all remaining indictments against TIECO because of the misconduct of the Attorney General's office in the investigation and prosecution of TIECO and others.

14.     On October 8, 1997, the federal district court reinstated the federal civil lawsuit.

15.     On October 8, 1997, TIECO amended its counterclaims to include allegations involving evidence discovered during the criminal proceedings, as well as claims of abuse of process, malicious prosecution, and interference with a business relationship.

SPECIFIC ALLEGATIONS

I - Documents from Attorney General's Office

16.     On January 12, 1996, the federal district court ordered USX to produce to TIECO all documents, data, records, and the like, that USX had received from the Attorney General's Office as a result of the Attorney General's search and seizure of TIECO's property on August 31, 1995.  17.

In response to the federal court order of January 12, 1996, on January 24, 1996, USX produced only 77 pages of documents and one computer tape.  The 77 pages consisted of copies of certain TIECO packing lists (also known as pick tickets) and invoices.  The computer tape contained data that had been seized by the Attorney General's Office on August 31, 1995; reformatted by TIECO's computer service provider, Western Pacific Data Systems in California, specifically for use on USX's computer; and then sent to USX in Pittsburgh on or about December 12, 1995.      18.

The data on the tape produced by USX was maintained on USX's computer until on or about June 2, 1996.  This data was also maintained by USX in hard copy form and, pursuant to USX's record retention policy is still in USX's possession.  From December of 1995 through June of 1996, USX ran queries on TIECO's data on an almost daily basis, thereby creating hundreds of computer

5

printouts of TIECO's data.

19.      On December 24, 1997, TIECO propounded its First Request for Production of Documents upon USX.  In Paragraph 4 of TIECO's First Request for Production of Documents, TIECO requested USX:

> "Produce any and all documents received from then Attorney General of the State of Alabama, Jeff Sessions and/or his attorneys, agents, investigators, employees or representatives, from January 1, 1995 through the date of this request, related in any way to TIECO."

20.      On or about January 23, 1998, USX responded and indicatred that these documents had already been produced by USX in January of 1996.  At that time, the only documents that had been produced by USX were the 77 pages produced on January 24, 1996.

21.      In reliance upon USX's representation that it had produced all of the documents it received from the Attorney General's Office, as well as USX's duty under the Federal Rules of Civil Procedure to supplement its responses, TIECO made no further request for records reflecting information received from the Attorney General's Office.

22.      On October 21, 1999, during the trial of the federal civil case, USX produced for the first time the spreadsheets reflecting information that USX obtained from its review of TIECO's seized records on or about October 10 and 11, 1995; November 7, 8 and 9, 1995; and January 31 and February 1, 1996.  USX intentionally withheld these documents from production even though the documents were responsive to the federal district court's order of January 12, 1996 and TIECO's First Request for Production of Documents.

23       Prior to the October 18, 1999 trial date, TIECO had no knowledge, nor could TIECO have discovered with the exercise of reasonable diligence, that USX's responses to the federal district court's order and to TIECO's First Request for Production of Documents were false, or that

6

USX intentionally suppressed the production of non-privileged, responsive documents.

## II - Tractor Shop Records

24.     On October 26, 1999, TIECO learned for the first time that USX intentionally withheld from production the records of the Tractor Shop that had been gathered by USX's Audit Division on or about November 13, 1995, as part of USX's special investigation of the TIECO matter. The Tractor Shop records included individual files maintained on each Cushman vehicle on USX's premises in Fairfield, Alabama. These records were responsive to TIECO's requests for production propounded upon USX in 1998, and were relevant to TIECO's defense against USX's claims.

25.     In Paragraph 11 of TIECO's First Request for Production of Documents propounded upon USX on or about December 24, 1997, TIECO requested USX to:

> "Produce any and all investigative files, including memoranda, notes, messages, correspondence, etc., created, requested and/or prepared by USX, its attorneys, auditors, employees, agents and/or representatives in any way related to TIECO, Inc.

26.     On or about January 23, 1998, USX responded to this request by stating that the investigative files had already been "produced." At that time, the only documents produced by USX were the 77 pages produced on January 24, 1996. The Tractor Shop records were not included in that production.

27.     On or about July 2, 1998, TIECO propounded upon USX its Second Request for Production of Documents and in paragraph 4 requested that USX:

> "Produce any and all information gathered by any member of the audit division as part of the pending audit of TIECO, Inc."

28.     On or about August 5, 1998, USX objected to this request claiming that the request was vague, ambiguous and not a request for production of documents. USX claimed that the Audit

Division of USX had not been asked to conduct an audit of TIECO.  USX maintained that documents gathered or generated by the Audit Division were covered by the attorney-client privilege and work product doctrine.  However, USX referred TIECO to its summary of damages produced by USX on August 5, 1998.

29.     By the time of USX's August 5, 1998 response to TIECO's second request for production, USX had engaged in an effort to suppress the production of responsive documents by waiving its prior assertion of the advice of counsel defense.

30.     On March 6, 1998, USX asserted as a defense to TIECO's counterclaims that USX relied upon the advice of its counsel in conducting its investigation of TIECO.  As a result of USX's reliance upon the advice of counsel defense, USX was obligated to produce its investigative files related to the TIECO matter.  Subsequently, on May 13 and 14, 1998, Defendant Hilton refused to answer deposition questions based upon attorney-client privilege, and for the first time USX expressed uncertainty about its continued assertion of the advice of counsel defense.  Alternatively, on or about July 6, 1998, USX represented to the federal district court and to TIECO that USX was not going to assert advice of counsel as a defense to TIECO's counterclaims.  TIECO relied upon USX's waiver of the advice of counsel defense and did not seek to compel the production of these requested documents.   USX never supplemented its response to the request for all information gathered by the Audit Division and continued to withhold production of the Tractor Shop records.

31.     On or about October 8, 1998, the federal district court ordered USX to produce for *in camera* review all records to which USX asserted the attorney-client privilege.  USX did not produce the Tractor Shop records to the federal district court and did not list the Tractor Shop records on USX's privilege log.

32.     On June 8, 1999 and October 5, 1999, Kenneth Falls ("Falls") provided information to TIECO as the corporate representative designated by Defendant USX as having the most knowledge of the daily operations of the Tractor Shop at USX's Fairfield plant, including but not limited to the placement of orders with vendors; the receipt of goods and services from vendors; the duties, responsibilities and activities of an Expediter; the maintenance of inventory at the Tractor Shop; the computer system used in the Tractor Shop and/or an Expediter; and the nature of goods and services obtained by the Tractor Shop.

33.     Falls advised that he undertook to locate records related to USX's disposition of Cushman vehicles from the Fairfield plant.  Records relating to the disposition of Cushman vehicles had been maintained in the Tractor Shop files gathered by the Audit Division.  Falls was advised by his predecessor, Richard Autry, that USX's Audit Division in Pittsburgh had the Tractor Shop records.   Falls never consulted with the Audit Division for these records.

34.      Falls inquired of USX's Engineering Department about the records related to Cushman vehicles prepared in conjunction with that Department's Facility Redeployment Group. Although USX's Engineering Department claimed to have no knowledge of the location of these records, on May 11, 2000, six months after trial, USX produced another 100 pages of records found in USX's Engineering Department.

35.     On October 8, 1999, TIECO filed a motion to compel USX to produce any and all documents relating to Cushman vehicles that had been on USX's Fairfield premises since 1980.

36.     Despite TIECO's requests for investigative files and for all information gathered by USX's Audit Division, including the Tractor Shop records relating to Cushman vehicles, on or about October 13, 1999, USX falsely represented to the federal district court that TIECO never requested

the Cushman records at issue.  USX further argued that even if TIECO had requested those records, they were not relevant to the claims and counterclaims.

37.     On October 15, 1999, pursuant to a pretrial hearing on TIECO's motion to compel the production of the Cushman records, the federal district court entered a Memorandum Opinion and Order of Preclusion. In the Preclusion Order, the court noted USX's concession that not all of the materials requested by TIECO relating to the Cushman vehicles had been produced by USX.  The federal district court found that USX had made, without justification, evasive and incomplete responses to TIECO's discovery efforts related to Cushman vehicles.  Since a compulsion order would not be sufficient in light of the October 18, 1999 trial date, and since USX claimed it was uncertain about the location of the requested materials, the court precluded USX from offering any evidence at trial relating to Cushman vehicles.

38.     On October 26, 1999, during the trial, USX represented to the federal district court and to TIECO that the Tractor Shop records had been obtained from USX's Audit Division and sent to Birmingham, Alabama, a few weeks before trial.  Also on October 26, 1999, USX admitted to the federal district court and to TIECO that the Tractor Shop's Cushman vehicle records were the subject of the pretrial hearing on October 14, 1999, and that the records were in the office of USX's counsel.  The federal district court ordered USX's counsel to deliver these records to the court for *in camera* review.  USX then produced the Tractor Shop records and other records for the first time.

39.     On October 28, 1999, after the jury had been instructed and had begun deliberations, the Tractor Shop records were produced to TIECO for the first time.   Also on October 28, 1999, USX admitted that the Tractor Shop records were in USX's possession at the time of the October 14, 1999, pretrial hearing, and that USX had failed to advise the court and TIECO during the pretrial

hearing that the Tractor Shop records were available.

40.     On October 28, 1999, the federal district court dismissed USX's claims against TIECO.  In the court's November 9, 1999 Memorandum Opinion Striking the Claims of the Plaintiff, among the grounds cited by the court for the dismissal were USX's failure to initially disclose evidence relevant to disputed facts, USX's purposeful failure to produce relevant evidence requested by TIECO, USX's efforts to mislead the court, and the fact that USX's actions deprived the jury of probative evidence.

41.     At all times relevant to the federal civil lawsuit, Defendant Hilton was responsible for determining what documents in the possession of USX were responsive to TIECO's requests for production.

III - Hilton's Files

42.     Despite the October 8, 1998, order by the federal district court to produce privileged documents for *in camera* review, USX did not produce the files of Defendant Hilton relating to USX's investigation of TIECO.  Defendant Hilton's file was listed on USX's privilege log.

43.     On November 10, 1998, Defendant Hilton testified in his deposition that he and his paralegal worked on USX's privilege log that was submitted to the federal district court.  Defendant Hilton further testified that he was aware that the documents listed on the privilege log had been delivered to the federal district court for *in camera* review.

44.     On October 20, 1999, Defendant Hilton advised the federal district court and TIECO for the first time that the files that he maintained and that related to USX's investigation of TIECO had not been produced for *in camera* review.

45.     On October 20, 1999, during trial, the federal district court ordered Defendant Hilton

11

to produce his files relating to USX's investigation of TIECO.

46.     On October 24, 1999, counsel for TIECO reviewed the files of Defendant Hilton. Contained within Defendant Hilton's files were numerous documents that were responsive to TIECO's requests for production and relevant to TIECO's counterclaims and defenses.

### VI - Hilton's Testimony

47.     In his deposition of November 10, 1998, Defendant Hilton testified that he was aware that the documents listed on USX's privilege log had been produced to the federal district court for *in camera* review.  The files of Defendant Hilton were included on the privilege log.  On October 20, 1999, Defendant Hilton admitted that his files were not included in the documents that had been produced to the federal district court.

48.     In his November 10, 1998 deposition, Defendant Hilton testified that USX's understanding with the Attorney General's Office was that the computer tapes containing TIECO seized records would only be used for purposes of assisting the Attorney General's Office.  On or about October 20, 1999, Audit Manager James Wager, USX's lead auditor investigating the TIECO matter, testified that most of the almost daily queries USX ran on TIECO's computer records were for the benefit of USX.

49.     On October 20, 1999, in an effort to mislead the jury, the federal district court, and TIECO, Defendant Hilton falsely claimed that he did not make the decision to place a three-day deadline on TIECO's decision to accept or reject USX's demand for payment.

50.     On October 20, 1999, in an effort to mislead the jury, the federal district court, and TIECO, Defendant Hilton falsely claimed that when USX's auditors reviewed TIECO's seized records at the Attorney General's Office, they were not doing so for the benefit of USX's

contemplated federal civil litigation.

51.     On October 26, 1999, in an effort to mislead the jury, the federal district court, and TIECO, Defendant Hilton falsely claimed that he did not dictate the methodology for determining the amount of money USX would demand from TIECO prior to filing the federal civil litigation.

52.     On October 26, 1999, Defendant Hilton falsely testified under oath in the federal civil litigation that once the Tractor Shop records were located in USX's Audit Division in Pittsburgh, Pennsylvania, they were sent to USX's counsel in Birmingham, Alabama, some weeks before trial began on October 18, 1999.  Some of the Tractor Shop records were not delivered to USX's Alabama counsel until a few days before trial, not delivered to the court until after trial began, and not disclosed to TIECO until after the jury began its deliberations.  Still other documents were not produced until months after trial .  Defendant Hilton's false testimony was an effort to shift the blame for USX's failure to produce requested and relevant documents to USX's Alabama counsel, even though Defendant Hilton testified that he was the USX official in charge of the federal civil litigation and he was responsible for the production of USX's documents. USX's failure to produce these requested and relevant records prevented TIECO from presenting a full and complete defense to USX's claims and a full and complete prosecution of TIECO's counterclaims.

V - Wager's Testimony

A.

53.     On or about July 10, 1996, Defendant Wager testified on behalf of the Attorney General's Office before the Alabama State Ethics Commission.  Defendant Wager advised the Ethics Commission that management employees at USX in Fairfield were receiving kickbacks from TIECO.

54.     On or about August 17, 1998, Defendant Wager testified in his deposition that USX had no proof that any management employees were receiving kickbacks from TIECO.

55.     On or about October 21, 1999, Defendant Wager falsely testified in the federal civil litigation that former Tractor Shop Coordinator Richard Autry was the only management person at Faifield that USX had determined had received kickbacks from TIECO.   At the time of Defendant Wager's statement, he was aware there was a state civil lawsuit pending against USX that had been filed by Richard Autry.

B.

56.     On or about October 20, 1999, and October 21, 1999, during trial cross-examination, Defendant Wager testified that he did not know the location of an inventory prepared by USX Auditor Robert Brown as part of USX's audit and/or special investigation of TIECO.  Defendant Wager further testified that he did not know the location of the inventory prepared by Richard Autry and maintained in the Tractor Shop records.

57.     Subsequently, during re-direct examination, Defendant Wager falsely testified that a reconciliation prepared by USX Auditor Jeffrey Answine (now known as Jeffrey Anzovino) was the continuation of the inventory began by USX Auditor Robert Brown.

C.

58.     On or about August 17, 1998, Defendant Wager testified in his deposition that Defendant Hilton made the decision to use USX security forces to locate and retrieve the USX employees to be interrogated by the Attorney General's Office, the Federal Bureau of Investigation, and USX auditors, without the employees' knowledge of the circumstances.

59.     On or about October 20, 1999, during the trial, Defendant Wager falsely testified that

14

Bernie Borman, then head of Human Resources at Fairfield, determined the method of retrieving the USX employees without notifying them of the circumstances.

D.

60.    On or about October 20, 1999, during the trial, Defendant Wager testified that, prior to his grand jury testimony, he advised the Attorney General's Office that he could only testify as to the method, or flow of paper, of transactions using TIECO's adjustment accounts.  Defendant Wager testified that he further advised the Attorney General's Office that he had no proof of any individual employees of USX who received property for their personal benefit that was billed to USX using the adjustment account method.

61.    On or about October 20, 1999, Defendant Wager testified that USX employee Tommy Holmes ("Holmes") never said he received property for his personal benefit that was billed to USX using the adjustment account method.  However, Holmes had advised USX that TIECO loaned him an old golf cart for his wife to use since she suffered from multiple sclerosis.  Holmes further advised USX that he had to repair the golf cart to make it usable.  Defendant Wager testified that he presumed the golf cart Holmes received from TIECO was paid for by USX because he saw a transaction involving a Cushman vehicle that involved the same time period during which Holmes obtained the loaner golf cart from TIECO.

62.    On or about October 21, 1999, Defendant Wager falsely testified that based upon USX's own research and work, USX was able to determine that USX employee Tommy Holmes received property for his personal benefit that was paid for by USX.

**COUNT I - COMMON LAW FRAUD**
(Defendants USX and Hilton)

63.    Plaintiff adopts and incorporates herein the allegations set forth in paragraphs 1

15

through 62.

64.     From January of 1998 through October of 1999, as described above, Defendant USX and Defendant Hilton intentionally misrepresented to TIECO the existence and location of documents requested by TIECO that were material to TIECO's defenses and counterclaims in the federal civil litigation.

65.     TIECO did not discover these misrepresentations, and could not have discovered these misrepresentations with the exercise of reasonable diligence, prior to October of 1999.

66.     The misrepresentations by Defendants USX and Hilton materially effected the presentation of TIECO's defenses and counterclaims.

67.     TIECO relied upon the misrepresentations of Defendants USX and Hilton to its detriment in that TIECO was prevented from presenting to the jury a full and complete defense to USX's claims and a full and complete prosecution of TIECO's counterclaims.

68.     As a direct and proximate cause of the wrongful conduct of Defendants USX and Hilton, TIECO was caused to suffer damages in excess of Five Million Dollars ($5,000,000).

WHEREFORE, PREMISES CONSIDERED, TIECO demands compensatory and punitive damages from Defendants USX and Hilton in an amount to be determined by a struck jury.  TIECO further demands any and all other relief as may be determined by the court or a jury.

## COUNT II - MISREPRESENTATION UNDER §6-5-101, ALA. CODE
### (All Defendants)

69.     Plaintiff adopts and incorporates herein the allegations set forth in paragraphs 1 through 68.

70.     Pursuant to §6-5-101, *Ala. Code* (1975):

"Misrepresentations of a material fact made willfully to deceive, or

16

recklessly without knowledge, and acted on by the opposite party, or
if made by mistake and innocently and acted on by the opposite party,
constitute legal fraud."

71.     From January of 1998 through October of 1999, as described above, Defendants
intentionally and/or recklessly  misrepresented to TIECO the existence and location of documents
requested by TIECO that were material to TIECO's defenses and counterclaims in the federal civil
litigation.

72.     TIECO did not discover these misrepresentations, and could not have discovered
these misrepresentations with the exercise of reasonable diligence, prior to October of 1999.

73.     The misrepresentations by Defendants materially affected the presentation of
TIECO's defenses and counterclaims.

74.     TIECO relied upon Defendants' misrepresentations to its detriment in that TIECO
was prevented from presenting to the jury a full and complete defense to USX's claims and a full and
complete prosecution of TIECO's counterclaims.

75.     As a direct and proximate cause of Defendants' wrongful conduct, TIECO was caused
to suffer damages in excess of Five Million Dollars ($5,000,000).

WHEREFORE, PREMISES CONSIDERED, TIECO demands compensatory and punitive
damages from Defendants in an amount to be determined by a struck jury.  TIECO further demands
any and all other relief as may be determined by the court or a jury.

### COUNT III - DECEIT
(All Defendants)

76.     Plaintiff adopts and incorporates herein the allegations set forth in paragraphs 1
through 75.

77.     Pursuant to §5-6-104, *Ala. Code* (1975):

17

"(a) One who willfully deceives another with intent to induce him to alter his position to his injury or risk is liable for any damage which he thereby suffers.

(b) A deceit within the meaning of this section is either:

(1) The suggestion as a fact of that which is not true by one who does not believe it to be true;

(2) The assertion as a fact of that which is not true by one who has no reasonable ground for believing it to be true;

(3) The suppression of a fact by one who is bound to disclose it or who gives information of other facts which are likely to mislead for want of communication of that fact; or

(4) A promise made without any intention of performing it.

78.     From January of 1998 through October of 1999, as described above, Defendants USX and Hilton intentionally mislead TIECO, as well as to the federal district court, to believe that documents material to TIECO's defenses and counterclaims could not be located and produced prior to trial, even though the documents themselves had been located at USX weeks before trial and were in USX's possession and under USX's control at the time of the representations

79.     At all times relevant to the federal civil litigation, Defendant Hilton was responsible for determining what documents in USX's possession were responsive to TIECO's requests for production and the federal district court's orders.

80.     Pursuant to the Federal Rules of Civil Procedure, Defendants USX and Hilton had duties to produce and to disclose the existence and location of these records.

81.     As a result of the deceit of Defendants USX and Hilton, TIECO was prevented from presenting a full and complete defense to USX's claims and a full and complete prosecution of TIECO's counterclaims.

82.     As a direct and proximate cause of the wrongful conduct of Defendants USX and Hilton, TIECO was caused to suffer damages in excess of Five Million Dollars ($5,000,000).

WHEREFORE, PREMISES CONSIDERED, TIECO demands compensatory and punitive damages from Defendant in an amount to be determined by a struck jury.  TIECO further demands any and all other relief as may be determined by the court or a jury.

### COUNT IV - PERJURY
(Defendants Hilton and Wager)

83.     Plaintiff adopts and incorporates herein the allegations set forth in paragraphs 1 through 82.

84.     Pursuant to §6-5-370, *Code of Alabama* (1975), a civil action may be commenced by an injured party for any injury resulting from a felony even if the offender is not criminally prosecuted.

85.     Pursuant to §13A-10-101, *Code of Alabama* (1975), a person commits the crime of perjury in the first degree, a felony, when in any official proceeding he swears falsely and his false statement is material to the proceeding in which it is made.

86.     Throughout the trial of the federal civil litigation, Defendants Hilton and Wager made numerous false statements to the jury, the federal district court, and to TIECO regarding the existence and location of relevant and requested documents, the results of USX's audit and/or special investigation, and pretrial testimony upon which TIECO relied.

87.     As a direct and proximate cause of the wrongful conduct of Defendant Hilton, TIECO was caused to suffer damages in excess of Five Million Dollars ($5,000,000.)

WHEREFORE, PREMISES CONSIDERED, TIECO demands compensatory and punitive damages from Defendant Hilton in an amount to be determined by a struck jury.  TIECO further

demands any and all other relief as may be determined by the court or a jury.

## COUNT V - NEGLIGENCE
### (All Defendants)

88.     Plaintiff adopts and incorporates herein the allegations set forth in paragraphs 1 through 87.

89.     For months prior to actually filing the underlying litigation on December 15, 1995, Civil Action No. CV-95-HS-3237-S, Defendants had actual knowledge of pending, potential and actual litigation.

90.     Additionally, Defendants had actual knowledge, participation and deliberate conduct in initiating criminal and civil actions against Plaintiff and others.  Plaintiff was indicted but said indictment was subsequently dismissed and voided *ab initio*.

91.     These Defendants voluntarily and involuntarily pursuant to agreement, specific requests and lawful obligation, had a duty to preserve and protect any and all evidentiary materials related to any of the pending litigations and breached and violated that duty by altering, concealing, destroying, modifying, and secreting relevant evidence that included vehicles, documents, testimony, statements, e-mails, memorandums, and other written and oral communications.

92.     Defendants breached their duty through the spoilation, alteration, concealment and/or destruction of evidence vital both to Plaintiff's criminal and civil litigation.

93.     Up to, through and including this day, USX has failed to comply with either Court orders or requirements under law to produce evidence and continues through this day to admit that it cannot confirm that all production pursuant to Court order or obligation has been produced or has not been destroyed, altered or concealed or otherwise spoiled.

94.     Defendants' conduct in spoiling, altering, concealing and/or destroying relevant

evidence damaged the Plaintiff's position in both litigations.

95.   Had the Defendants not engaged in this conduct, there would not have been an indictment against Plaintiff and Plaintiff would have prevailed both in the defense and in prosecution of the civil action.  Therefore Plaintiff's injury was directly and proximately caused by Defendants' spoilation of vital and relevant evidence.

96.   Plaintiff claims as compensatory damages, damages the Plaintiff would have been entitled to in the underlying actions and all costs and expenses, including attorney's fees associated with the defense of the underlying criminal and civil action.  Plaintiff further claims punitive damages against Defendant for Defendants' spoilation of relevant evidence.

WHEREFORE, PREMISES CONSIDERED, TIECO demands compensatory and punitive damages from Defendants in an amount to be determined by a struck jury.  TIECO further demands any and all other relief as may be determined by the court or a jury.

## COUNT VI - SUPPRESSION
(All Defendants)

97.   Plaintiff adopts and incorporates herein the allegations set forth in paragraphs 1 through 96.

98.   Defendants suppressed the fact that relevant and requested documents had been located prior to trial and were available for production.  The existence and location of these records were material to the federal civil litigation.

99.   Defendants had a legal duty to communicate the facts that these documents were located and available for production pursuant to the orders of the federal district court and the Federal Rules of Civil Procedure.

100.   As a result of Defendants' suppression, TIECO was prevented from presenting a full

and complete defense to USX's claims, and was forced to expend additional monetary sums in an effort to seek the production of these records.

101.    As a direct and proximate cause of the wrongful conduct of Defendants, TIECO was caused to suffer damages in excess of Five Million Dollars ($5,000,000).

WHEREFORE, PREMISES CONSIDERED, TIECO demands compensatory and punitive damages from Defendants in an amount to be determined by a struck jury.  TIECO further demands any and all other relief as may be determined by the court or a jury.

## COUNT VII - CONSPIRACY
### (Defendants Hilton and Wager)

102.    Plaintiff adopts and incorporates herein the allegations set forth in paragraphs 1 through 101.

103.    During the month of October of 1999, or immediately prior thereto, Defendants Hilton and Wager, agreed between and among themselves to  withhold from production documents that were relevant to TIECO's defenses and counterclaims.   The conspiracy to suppress the production of these documents began as early as 1998, continued through the time of trial in October of 1999, and even through the post-trial production of court-ordered documents in May of 2000.

104.    As a result of this conspiracy, TIECO was prevented from presenting a full and complete defense to USX's claims and was forced to expend additional monetary sums in an effort to seek the production of these records.

105.    As a direct and proximate cause of the wrongful conduct of Defendants, TIECO was caused to suffer damages in excess of Five Million Dollars ($5,000,000).

WHEREFORE, PREMISES CONSIDERED, TIECO demands compensatory and punitive damages from Defendants in an amount to be determined by a struck jury.  TIECO further demands

any and all other relief as may be determined by the court or a jury.

**PLAINTIFF DEMANDS TRIAL BY STRUCK JURY**.


s/ J. Mark White
J. Mark White
Linda G. Flippo
Stephen R. Arnold

**OF COUNSEL:**
**WHITE ARNOLD ANDREWS & DOWD P.C.**
2025 Third Avenue North,  Suite 600
Birmingham, Alabama  35203
(205) 323-1888 / (205) 323-8907 (fax)

**OF COUNSEL:**
Ralph D. Cook
James R. Pratt, III
D. Leon Ashford
**HARE WYNN NEWELL & NEWTON P.C.**
2025 Third Avenue North,  Suite 800
Birmingham, Alabama 35203
(205) 328-5330 / (205) 324-2165 (fax)

**CERTIFICATE OF SERVICE**

I hereby certify that on the 4th day of October, 2005, I electronically filed the foregoing Amended Complaint  with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following CM/ECF- participant counsel of record, and I certify that I have mailed a copy of the foregoing by United States Postal Service, properly addressed and postage prepaid, to the following non-CM/ECF-participant counsel of record:

Warren B. Lightfoot
Jere F. White, Jr.
Sara Anne Ford
Sarah O. Warburton
Lightfoot Franklin & White, LLC
The Clark Building
400 20th Street North
Birmingham, Alabama 35203

H. Thomas Wells, Jr.
John A. Earnhardt
Mitesh B. Shah
Maynard Cooper & Gale, PC
AmSouth Harbert Plaza,
Suite 2400
1901 6th Avenue North
Birmingham, AL 35203-2618


s/J. Mark White
Of Counsel